IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEDDY JAMES, | No. C 03-5357 MMC (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| D. ADAMS, Warden, | |
| Respondent. | |

On February 9, 2004, petitioner Teddy James, a California prisoner proceeding pro se, filed the above-titled amended petition[1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 25, 2004, the Court ordered respondent to show cause why the petition should not be granted based on petitioner's cognizable claims for relief. On October 25, 2004, respondent filed an answer accompanied by a memorandum and exhibits. Petitioner did not file a traverse.

**PROCEDURAL BACKGROUND**

In May 1998, in Alameda County Superior Court, petitioner was charged with attempted murder and two counts of being a felon in possession of a firearm. The information alleged the attempted murder was willful, deliberate and premeditated, that

---

[1] The Court hereinafter refers to the amended petition as "the petition."

1

1  petitioner personally used a firearm, and that petitioner personally inflicted great bodily
2  injury.  On January 11, 2000, petitioner pleaded no contest to the attempted murder charge
3  and admitted the firearm use and great bodily injury allegations, based on a negotiated no
4  contest plea for twenty years in state prison.  Petitioner thereafter moved to withdraw his no
5  contest plea.  On August 25, 2000, the Alameda County Superior Court heard oral argument
6  on petitioner's motion to withdraw his no contest plea, and denied the motion.  On
7  October 13, 2000, the court sentenced petitioner to twenty years in state prison.

8  The California Court of Appeal affirmed petitioner's conviction in an unpublished
9  opinion, the Supreme Court of California denied the petition for review, and the United
10 States Supreme Court denied a petition for a writ of certiorari.  Petitioner thereafter filed
11 unsuccessful state habeas petitions in the Alameda County Superior Court, the California
12 Court of Appeal and the California Supreme Court.  Petitioner next filed a federal habeas
13 petition in this court, claiming: (1) his right to due process was violated because the
14 prosecutor was biased against him due to a conflict of interest relating to a personal
15 relationship with the victim; (2) his second attorney, Robert Beles ("Beles"), provided
16 ineffective assistance because he (a) failed to raise the conflict of interest in the trial court,
17 (b) failed to call exculpatory witnesses at the hearing on petitioner's motion to withdraw his
18 no contest plea, and (c) failed to raise the conflict of interest on appeal;[2] and (3) the denial of
19 petitioner's motion to withdraw his no contest plea violated his right to due process.

---

[2] Beles represented petitioner in the trial court following the entry of his no contest plea, as well as on appeal. In his form petition, petitioner set forth only one ineffective assistance of counsel claim – Beles' failure to raise conflict of interest on appeal – and this was the only ineffective assistance claim referenced in the Court's August 25, 2004 Order to Show Cause. Further review of the voluminous unnumbered exhibits attached to the form petition has revealed, however, that petitioner raises therein two additional claims of ineffective assistance of counsel. For the reasons discussed below, these additional claims lack merit and, consequently, respondent has not been directed to address them.

2

**FACTUAL BACKGROUND**

The following factual account is set forth in the California Court of Appeal's opinion:[3]

> On November 26, 1997, petitioner drove to the home of a friend, Deno Brown, and told him he needed to "holler at [him]" about something. Brown got into petitioner's car. Petitioner drove off and he started questioning Brown about a girl petitioner was dating. Brown denied a romantic interest in the girl, but petitioner did not believe him. He shot Brown twice and pushed him out of the car. As Brown was lying on the ground, petitioner shot him several more times, hitting him in the face, neck, and shoulder.

People v. James, No. A095182, slip op. at 1 (Cal. Ct. App. April 8, 2002) (hereinafter "Slip Op.") (attached as Resp.'s Ex. F).[4]

**DISCUSSION**

A.   Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). A federal court must presume

---

[3]The Court has substituted "petitioner" for "appellant" in the California Court of Appeal's factual account.

[4]The Court of Appeal provided a brief summary of the facts of the crime because petitioner pled no contest before trial. In discussing the claims below, the Court, where necessary, provides a more detailed factual account.

the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

B.      Petitioner's Claims

   1.      Conflict of Interest

Petitioner first contends he was deprived of his Fourteenth Amendment right to due process because the prosecutor in his case had a conflict of interest stemming from an alleged personal relationship with the family of the victim, Deno Brown ("Brown").  Because of this alleged relationship, petitioner claims the Alameda County District Attorney's Office charged him with attempted premeditated murder, rather than assault with a deadly weapon (Pet. at 82),[5] the offense on which he was originally booked by the Oakland Police Department.  (Id. at 75.)

Petitioner's no contest plea bars federal habeas relief on this claim.  A defendant who pleads guilty or no contest cannot later raise in federal habeas proceedings independent claims relating to the deprivation of constitutional rights that occurred before the entry of such plea.  See Haring v. Prosise, 462 U.S. 306, 319-320 (1983); Tollett v. Henderson, 411 U.S. 258, 266-67 (1973); Cal. Pen. Code § 1016 ("A plea of nolo contendere shall be considered the same as a plea of guilty. . . .The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); see also Ortberg v. Moody, 961 F.3d 135, 137-138 (9th Cir. 1992) (applying Tollett to no contest plea).  The only challenges left open in federal habeas proceedings after a plea of guilty or no contest are to the voluntary and intelligent character of the plea and to the nature of the advice of counsel to so plead.  See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett, 411 U.S. at 267.  Moreover, a defendant who enters a guilty or no contest plea on the advice of counsel, as did petitioner herein, may only attack the voluntary and intelligent character of that plea by showing the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  See Hill, 474 U.S. at 56; Tollett, 411

---

[5] The petition consists of a form petition comprised of pages numbered 1 through 6 and voluminous unnumbered attachments.  The page numbers in the citations herein are derived by the process of counting, beginning with the first page of the form petition.

4

U.S. at 267; see also United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988).

Here, because the charge was increased to attempted premeditated murder prior to the time petitioner entered his no contest plea, any constitutional violation arising from that charging decision likewise occurred prior to the no contest plea. In his first claim, petitioner does not challenge the advice of counsel to plead no contest, nor does he claim his plea was not intelligent and voluntary. Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Ineffective Assistance of Counsel

Petitioner asserts three ineffective assistance claims stemming from his representation by Beles. The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The right to effective counsel arises at every "critical stage" of criminal proceedings, Maine v. Moulton, 474 U.S. 159, 170 (1985), including plea hearings, see Weaver v. Palmateer, 455 F.3d 958 (9th Cir. 2006), and appeal, see Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). To prevail on a Sixth Amendment ineffectiveness claim, a petitioner must establish: (1) counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, Strickland, 466 U.S. at 687-688; and (2) he was prejudiced by counsel's deficient performance, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. In addition he must establish that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002).

Here, petitioner presented his ineffective assistance claims in state habeas petitions that were summarily denied. As there is no reasoned state court opinion denying these claims, this Court must engage in an "independent review of the record" to determine whether the state court's denial of the petition constituted an unreasonable application of clearly established federal law on the right to effective assistance of counsel. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

        a.    <u>Failure to Raise Conflict of Interest in the Trial Court</u>

Petitioner first asserts Beles' performance was deficient in failing to file a motion to disqualify the prosecutor based on an alleged conflict of interest, and in failing to raise this alleged conflict of interest as a ground for withdrawing the plea.

The success of such claim is dependent upon whether Beles could have successfully demonstrated a conflict of interest existed under California law. Trial counsel cannot be deemed ineffective for failing to raise a meritless motion. <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996). Under applicable California law, a judge must grant a defendant's motion to disqualify a district attorney when the "evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." Cal. Pen. Code § 1424; <u>People v. Conner</u>, 34 Cal.3d 141, 144 (1983). "First, a conflict of interest must be shown, that is, there must be a 'reasonable possibility that the [district attorney's] office may not exercise its discretionary function in an evenhanded manner." A defendant is unlikely to receive a fair trial where there is a "reasonable possibility that the [district attorney's] office may not exercise its discretionary function in an evenhanded manner." <u>Id</u>. at 148. In <u>Conner</u>, the California Supreme Court set forth "a two-part test for determining whether recusal is required: (1) is there a conflict of interest and (2) is the conflict so severe as to disqualify the district attorney from acting?" <u>People v. Choi</u>, 80 Cal.App.4th 476, 481 (2000). A severe conflict exists when the "potential for prejudice is 'real' and rises 'to the level of a likelihood of unfairness.'" <u>People v. Millwee</u>, 18 Cal.4th 96, 123 (1998) (quoting <u>People v. Eubanks</u>, 14 Cal.4th 580, 592 (1996)).

In the instant petition, petitioner claims the prosecutor had a conflict of interest based on a personal relationship with Brown. Petitioner states "DA Morris Jacobson and (Victim) Deno Brown association come from the D.A.'s son went to school with the victim." (Pet. at 5.) In particular, petitioner alleges that his first attorney, Donald Clay ("Clay"), told him "Deno Brown went to St. Mary's Catholic School with the D.A. Morris Jacobson's son and that their relationship had been in existence for quite sometime." (Pet. at 89.) Petitioner

6

1  does not indicate how Clay purportedly obtained this understanding.  Morris Jacobson
2  ("Jacobson"), a deputy district attorney who made a single appearance in petitioner's case,
3  denies the existence of any such relationship.  In a declaration submitted by respondent,
4  Jacobson states: "I never had a child who attended St. Mary's Catholic School or who ever
5  attended school with Deno Brown. . . . I have never had a personal relationship with Deno
6  Brown or his family." (Resp.'s Ex. K ¶¶ 3-4.)[6]  Petitioner further alleges Clay told him "that
7  the Head of the, Alameda County district attorneys office had actually red-flagged,
8  petitioner's case for special treatment and or handling." (Pet. at 79 (emphases omitted).)
9  Even assuming Clay so opined, the import of the remark is at best, ambiguous, and no
10 impropriety is shown thereby.  Indeed, one would expect a case of such serious nature would
11 be given special attention.  In sum, the comments attributed to Clay do not show a conflict of
12 interest existed on the part of the prosecution.

13      Lastly, petitioner relies on declarations submitted by two individuals, Joanna Smith
14 ("Smith") and Jamil Mitchell ("Mitchell"). (Pet. at 31, 33.)  Smith states she spoke with
15 Brown in March 1998, at which time Brown "conveyed that his parents had a friend, the
16 deputy district attorney overseeing the case, who would make sure that the person
17 responsible for injuring him would serve time in jail." (Pet. at 31.) Mitchell states he had a
18 conversation with Brown in June 1998, during which they discussed Brown's injuries and
19 Brown "went on to say that he wasn't worried about the guy who shot him getting out
20 because his father personally knows the Deputy District Attorney who was working on the
21 case. He also said that the Deputy DA is doing his family a favor and is making sure James:
22 [sic] serves the longest prison term possible." (Pet. at 33.)

23      Even assuming Brown "conveyed" the above or similar sentiments to Smith and/or
24 Mitchell, such comments do not demonstrate a conflict or other impropriety in the handling
25 of the case.  There is no question that Brown's father "personally knew" the prosecutor.  As
26 Jacobson himself informed the trial court at a hearing at which the court and counsel

---

[6]The remarks petitioner attributes to Clay are, by contrast, hearsay.

7

1  discussed the length of a proposed continuance: "I have had a lot of contact with the family
2  and we have been trying to get the case out [to trial] for some months now." (See Pet. at
3  23.)[7] Further, given the extremely violent nature of the offense, there is nothing
4  extraordinary in the prosecution's seeking the "longest prison term" or in reassuring a
5  potential, and no doubt apprehensive, witness that the defendant would not be in a position to
6  retaliate against him for his testimony. Put another way, there is no indication that Jacobson
7  had any contact with the victim or his family other than, as Jacobson attested, "the normal
8  preparation of a case for trial." (See Resp.'s Ex. K ¶ 4.)

9       Moreover, even if the Court assumes, arguendo, that Jacobson had some sort of
10 "association" with Brown's family, for petitioner to have succeeded on a motion to disqualify
11 or to withdraw his plea based on an asserted conflict, he would have had to have shown not
12 only a conflict, but a conflict of such magnitude that "the potential for prejudice is real and
13 rises to the level of a likelihood of unfairness." See Millwee, 18 Cal.4th at 122-123 (internal
14 quotations and citation omitted). In Conner, for example, the California Supreme Court
15 found a conflict warranting disqualification where a deputy district attorney was an
16 eyewitness to one of the charged offenses, an escape from custody during which a deputy
17 sheriff had been stabbed and shot and the deputy district attorney himself had narrowly
18 missed being shot; additionally, the deputy district attorney had discussed his involvement
19 with a "substantial number of" his coworkers. See Conner, 34 Cal.3d at 144, 147-48. In
20 People v. Choi, the California Court of Appeal found disqualification appropriate where the
21 District Attorney told the press he believed his "close personal friend" also had been
22 murdered by the defendant, caused a mistrial, persisted in talking to the press thereafter, and
23 attempted to communicate ex parte with the judge before whom the recusal motion was
24 under submission. See Choi, 80 Cal. App. 4th at 479-84.

25      Here, unlike in Conner, there is nothing to suggest the prosecutor was "inextricably
26 involved" in the facts of the case, see Conner, 34 Cal. 3d at 148, nor is there any indication of

27
28     [7]Petitioner's reliance on this statement as a concession of a personal, rather than professional, relationship is misplaced.

8

the type of close relationship, let alone conduct, that existed in Choi. Although petitioner asserts Jacobson's purported conflict of interest caused him to be charged with attempted premeditated murder as opposed to assault with a deadly weapon, petitioner's argument is unavailing. To begin with, a different deputy district attorney, Sharmin Ezhraghi, not Jacobson, prepared the Information charging petitioner with attempted premeditated murder. (Resp.'s Ex. A at 128-30.) Indeed, the only time Jacobson appeared in the case was at a hearing to appoint an alienist. (Resp.'s Ex. B, Reporter's Transcript 9/7/1999 at 1.) Petitioner cites to no portion of the record, or any other evidence, indicating that Jacobson had any involvement in the charging decision.

In Millwee, the California Supreme Court, in rejecting a claim that a purported conflict of interest caused the prosecutor to file more serious charges, held the fact that sufficient evidence existed to support the charges was a factor indicating the charging decision was made "pursuant to an impartial and legitimate exercise of prosecutorial discretion" and did not warrant recusal of the prosecutor. Millwee, 18 Cal.4th at 124-125. Here, similarly, there was ample evidence to support the prosecution's decision to charge petitioner with attempted premeditated murder as opposed to assault with a deadly weapon.[8] At the preliminary hearing, Brown testified that petitioner shot him in the chest, arm and intestines while the two were seated in petitioner's car. (Resp.'s Ex. A at 12.) Believing he would die, and hoping that petitioner would stop shooting him, Brown played dead. (Id. at 13.) Petitioner drove for 30 to 45 seconds and then pushed Brown out of the car. (Id.) Brown's left foot got stuck in the door jamb, at which point, as Brown lay helplessly on the ground, petitioner shot him four more times, including in the shoulder, neck and face. (Id. at 16.)

---

[8] The elements of attempted murder are a "direct but ineffectual act. . .done by one person towards killing another human being" and "malice aforethought, namely, a specific intent to kill unlawfully another human being." See CALJIC No. 8.66. The elements of attempted premeditated murder are "a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation." See CALJIC No. 8.67. The test is "not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time. . . ." See id.

In sum, there was virtually indisputable evidence that Brown was shot in his vital organs multiple times at close range, the last four shots, which included shots to his neck and face, being delivered as he lay helplessly on the ground. This evidence fully supported a charge of attempted murder, not simply assault with a deadly weapon. Additionally, the timing of the shots and, in particular, the interval between essentially two distinct shooting episodes, equally supports a charge of premeditation. In short, there is no indication the case would have been charged "differently if either a different district attorney or a different defendant were involved." Millwee at 125.

For all of the reasons discussed above, an argument based on conflict of interest would not have succeeded under California law. Consequently, Beles' failure to raise the issue, either in a motion to disqualify or in the motion to withdraw petitioner's no contest plea, did not constitute ineffective assistance of counsel. Accordingly, habeas relief is unavailable on this claim.

b.  Failure to Call Witnesses at Plea Withdrawal Hearing

Petitioner asserts Beles provided ineffective assistance at trial by not calling petitioner's mother and uncle, Katherine James and Donald James, to testify at the hearing on his motion to withdraw the plea. According to petitioner, these witnesses would have supported his claim that Clay had incorrectly informed him that he could receive a sentence of life without parole if he was convicted of the charged offenses at trial. The California Court of Appeal gave the following account of the hearing on petitioner's motion to withdraw his plea:[9]

> Petitioner argued in his motion that he was entitled to withdraw his no contest plea because his initial defense counsel, Don Clay, had misadvised him about the possible consequences he faced. The information charged petitioner with attempted murder and included an allegation that the crime was willful, deliberate and premeditated. By statute, a willful, deliberate and premeditated attempted murder carries a possible sentence of life in prison *with the*

---

[9]The Court of Appeal provided this factual summary in denying petitioner's claim that the motion to withdraw the plea should have been granted. On direct appeal, the Court of Appeal did not rule on the claim addressed here, namely, that Beles was ineffective in his handling of the motion. Petitioner's claims of ineffective assistance of counsel were raised in his state habeas petitions, which, as noted, were summarily denied.

*possibility of parole*. According to petitioner, Clay told him he could be sentenced to life *without the possibility of parole*. As petitioner stated in the declaration he submitted in support of his motion, "On that day of the plea, Mr. Clay told me he had read 'detective notes' and they were damaging, and told me at the time that if the prosecutors proved the premeditation clause, the court would sentence me to life in prison without the possibility of parole. [¶] I then agreed to plead guilty to attempted murder without the premeditation clause and receive a twenty year sentence. I did so only because I thought that was the only way to avoid the chance that I would be convicted and sentenced to life in prison without parole. I did not want to plead guilty otherwise because I believed that I had a good chance of not being convicted of either attempted murder or the premeditation clause. [¶] If I had known that the premeditation clause only carried a sentence of life with parole, I would have taken the risk of being convicted of premeditated attempted murder in order to have a trial. It was only because I could not risk a sentence of life without possibility of parole that I [pled] guilty to the prosecutor's offer of a twenty year sentence. If my attorney had given me the correct information about the premeditation clause, I would not have entered the guilty plea."

The trial court conducted a hearing on petitioner's motion. Petitioner testified and he reiterated the statements he made in his declaration. Former defense counsel Clay also testified and he flatly denied ever telling petitioner he faced a sentence of life without the possibility of parole. As Clay stated during direct examination by the prosecutor, "Q. [D]id you ever advise the defendant as to the maximum sentence in this matter? [¶] A. Yes, I did. [¶] Q. Regarding the issue of life, the life sentence and parole, can you explain to the court how you advised the defendant in that regard? [¶] A. I advised Mr. James that the maximum sentence for this offense was life in prison. At no time did I advise him the sentence in this case was life without the possibility of parole. This case was set for trial. We were prepared for trial. This matter was continued over the weekend to give Mr. James an opportunity to decide whether or not he wanted to go to trial or take a disposition with a fixed term. [¶] Mr. James' concern was that he wanted a date for release[;] with the disposition that he was given he had a certain date for release. He was told that he could not be guaranteed with a life top that he would be paroled. [¶] We have no control over the parole board. That's what he faced as a maximum if he was convicted of attempted murder. That's what he was told."

Under cross-examination by petitioner's new counsel, Clay reiterated the thrust of his discussion with petitioner: "Q. So there was a discussion about if he was convicted of attempt[ed] 187 with a premeditation clause that he would be doing a life sentence – the term is life with the possibility of parole? [¶] A. The term was life. [¶] Q. And, again, there is that discussion that happens. You're a very experienced criminal defense lawyer. There's a discussion [that] the client wants to know well, will I be paroled or won't I be paroled. What you were saying I guess, is there is no control the court has over what the parole board's going to do on that? [¶] A. That's exactly what was explained to Mr. James. [¶] Q. I guess what you're saying is clearly did you not advise him that he was risking life without any possibility of parole. You never advised him that? [¶] A. Absolutely not. [¶] Q. You simply – if I understand your testimony, you're saying that you said to him that there are people who go in on life sentences, that there's no guarantees when they'll be paroled? [¶] A. I didn't even say that. I just told him he had a life top and that the parole board, if in fact he was eligible for parole under that sentence, they would make the determination."

(Slip Op. at 2-4) (italics in original; footnotes omitted).

When no other corroborating evidence is presented, the failure to call a witness who would significantly corroborate the defendant's theory of the case is deficient performance, absent some objective evidence supporting the decision not to call the witness. See Alcala v. Woodford, 334 F.3d 862, 871 (9th Cir. 2003); see also Brown v. Myers, 137 F.3d 1154, 1158 (9th Cir. 1998) (finding defendant was prejudiced by his attorney's failure to call available corroborating alibi witnesses when no other evidence was introduced to support his testimony). A defense counsel's performance is not deficient, however, unless the missing witness actually would have "significantly altered the evidentiary posture of the case." See id. at 1157. In reviewing the record, the court should afford deference to an attorney's decision not to call a particular witness, because "[f]ew decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness . . . . A witness who appears shifty or biased and testifies to X may persuade the jury that not-X is true, and along the way cast doubt on every other piece of evidence proffered by the lawyer . . . ." Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1998).

Here, appended to the petition, are declarations by petitioner's mother and uncle, stating they informed Beles of a conversation they had with Clay in which Clay told them that "[i]f [petitioner] does not take the plea and loose [sic] at trial that he would spend the rest of his life behind bars." (Pet. at 19-20.) Both state they were in court on the day of the August 25, 2000 hearing, prepared to testify consistent with their statements in these declarations, but Beles did not call them to testify. (Pet. at 19-20.)

Under California law, in order to withdraw a guilty or no contest plea, a defendant must present clear and convincing evidence of good cause. Cal. Penal Code § 1018; People v. Hunt, 174 Cal.App.3d 95, 104 (1985). Good cause exists when a defense attorney "grossly mischaracterizes" the sentence a defendant faces, rendering a plea not voluntary and knowing. Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1985).

The statement Clay purportedly made to petitioner's family does not constitute clear and convincing evidence that Clay grossly mischaracterized the sentence petitioner faced. To begin with, neither petitioner's mother nor uncle states either of them was present at the

1  conversations between petitioner and Clay, or claim to have witnessed what Clay told
2  petitioner about his possible sentence.  Moreover, Clay's alleged statement, that petitioner
3  "would spend the rest of his life behind bars" if he was convicted at trial, is not inconsistent
4  with Clay's testimony that he advised petitioner that the court has no control over the parole
5  board and that petitioner could not be guaranteed parole.  Rather, assuming the statement was
6  made, it is wholly consistent with an experienced defense attorney's assessment that he
7  would not expect the parole board to grant petitioner parole, even though petitioner would at
8  some point become technically eligible.  Consequently, even if called as witnesses,
9  petitioner's family members would not have given testimony that would have "significantly
10 altered the evidentiary posture" of the plea withdrawal hearing.  Under such circumstances,
11 Beles was not deficient in failing to call them as witnesses, nor was petitioner prejudiced by
12 any such failure, as there was no reasonable probability that their testimony would have
13 convinced the trial court to grant petitioner's motion to withdraw his plea.  Accordingly,
14 petitioner is not entitled to habeas relief on this claim.

15              c.    Ineffective Assistance of Counsel on Appeal

16       Petitioner next alleges that Beles provided ineffective assistance on appeal because he
17 did not raise therein the issue of the prosecutor's alleged conflict of interest.  After
18 petitioner's motion to withdraw his plea was denied and he was sentenced to state prison,
19 Beles filed an appeal in the California Court of Appeal.  The appeal was based solely on the
20 trial court's denial of petitioner's motion to withdraw his plea and the ineffectiveness of his
21 former attorney, Clay, as trial counsel.  (Pet. at 43-51.)  The prosecutor's alleged conflict was
22 not raised.
23       The Due Process Clause of the Fourteenth Amendment guarantees a criminal
24 defendant the effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey,
25 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are
26 reviewed according to the standard set out in Strickland.  Miller, 882 F.2d at 1433; United
27 States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  The weeding out of weaker issues is
28 widely recognized as one of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d

at 1434.  For the reasons discussed above, petitioner's claim that a conflict of interest led the prosecutor to charge him with a more serious crime is without merit under California law. Consequently, Beles did not provide ineffective assistance on appeal in weeding out such claim.  Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3. Denial of Motion to Withdraw Plea

Petitioner's final claim asserts that his due process rights were denied when the trial court refused to grant his motion to withdraw the no contest plea, in which motion he claimed Clay had misadvised him as to the potential sentence.  Due process requires that a guilty plea be both knowing and voluntary.  Boykin v. Alabama, 395 U.S. 238, 243 n.5 (1969).  When a defendant is "represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  As noted, a plea may be withdrawn as not knowing and voluntary where the defendant shows his defense attorney grossly mischaracterized his exposure as to sentencing.  See Iaea, 800 F.2d at 865.

In the instant case, the trial court, on August 25, 2000, held a hearing on the motion to withdraw.  The California Court of Appeal related the trial court's reasoning in denying the motion at the conclusion of the hearing:

> The trial court considered this evidence and denied petitioner's motion explaining its decision as follows, "Motion to withdraw the plea is denied.  I heard both the defendant testify and also Mr. Clay, his previous attorney, and Mr. Clay is an experienced defense attorney.  He indicated [that] he explained it several times.  It appeared to me that that was reasonable given the circumstances."

(Slip Op. at 4.)  The Court of Appeal affirmed, finding Clay "did not misadvise" petitioner. (Slip Op. at 5.)

Based on the evidence presented at the hearing, the trial judge weighed petitioner's and Clay's conflicting testimony as to what Clay had told petitioner about the potential sentence he faced if convicted at trial, and found Clay's testimony more credible.  On appeal, the California Court of Appeal agreed with the trial court's factual finding that Clay had

informed petitioner that the maximum sentence for attempted premeditated murder was life with the possibility of parole. (See Slip Op. at 4-5.)[10] Under AEDPA, this Court is required to presume correct any determination of a factual issue made by a state court, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(d)(2). Here, Clay's testimony that he told petitioner the sentence petitioner faced if he were to be convicted at trial was life, and not life without the possibility of parole, provides sufficient evidence to support the factual finding by the state courts. Petitioner points to no evidence in the record, let alone clear and convincing evidence, indicating that the state courts should have rejected Clay's testimony in favor of petitioner's. Given the presumption of correctness that must be afforded to the state courts' factual finding that Clay did not misadvise petitioner on this matter, the denial of petitioner's motion to withdraw his plea did not violate petitioner's right to due process. Accordingly, petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the reasons expressed above, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: December 7, 2006

_____
MAXINE M. CHESNEY
United States District Judge

---

[10] The declarations of Katherine and Donald James, discussed above, were not a part of the record before the state courts. For the reasons discussed above, however, such evidence would not have warranted the trial court's granting the motion to withdraw.